1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10
11  OFELIA OSEGUERA,                    )    Case No. CV 08-4783-JTL
                                        )
12           Plaintiff,                 )    MEMORANDUM OPINION AND ORDER
                                        )
13      v.                              )
                                        )
14  MICHAEL J. ASTRUE,                  )
    Commissioner of Social Security,    )
15                                      )
             Defendant.                 )
16  _____)

17                          **PROCEEDINGS**

18          On July 22, 2008, Ofelia Oseguera ("plaintiff") filed a Complaint seeking review of the
19  Social Security Administration's denial of her application for Disability Insurance Benefits.  On
20  July 30, 2008, plaintiff filed a Consent to Proceed Before United States Magistrate Judge
21  Jennifer T. Lum.  On August 8, 2008, Michael J. Astrue, Commissioner of Social Security
22  ("defendant"), filed a Consent to Proceed Before United States Magistrate Judge Jennifer T.
23  Lum.  Thereafter, on December 1, 2008, defendant filed an Answer to the Complaint.  On
24  February 25, 2009, the parties filed their Joint Stipulation.
25          The matter is now ready for decision.
26  ///
27  ///
28  ///

**BACKGROUND**

On October 8, 2004, plaintiff filed an application for Disability Insurance Benefits alleging an onset date of December 12, 2003, due to back, left foot and left knee injuries and a thyroid problem. (See Administrative Record ["AR"] at 51, 59, 79). The Commissioner initially denied plaintiff's application on February 18, 2005. (AR at 59; see AR at 51). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 57).

On February 1, 2007, the ALJ conducted a hearing in Downey, California.[1] (See AR at 298-314). Plaintiff appeared at the hearing with counsel and testified with the aid of a Spanish language interpreter. (AR at 291, 293-311). Susan Green, a vocational expert, also testified at the hearing. (AR at 311-13). On February 22, 2007, the ALJ issued a decision denying benefits to plaintiff. (AR at 20-25). In his decision, the ALJ determined that plaintiff had the following severe impairments: degenerative changes of the left knee, status post arthroscopic surgery, a lumbar strain syndrome, and an L4-5 disc protrusion without encroachment in the neural foramina. (AR at 22). The ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or equal the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (AR at 23). The ALJ determined that plaintiff retained the residual functional capacity to do the following: lift 25 pounds frequently and 50 pounds occasionally; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; perform no more than occasional climbing and balancing; and was precluded from operating foot controls with her left lower extremity. (AR at 23). The ALJ found that plaintiff retained the ability to perform her past relevant work as a machine operator. (AR at 25). Accordingly, the ALJ concluded that plaintiff was not disabled from December 12, 2003, the alleged disability onset date, through the date of his

---

[1] The ALJ conducted an initial hearing on March 7, 2006. Plaintiff had not returned the acknowledgment of the notice of the hearing and did not appear at the hearing. (AR at 281-83). The ALJ held another hearing on May 31, 2006, but continued the hearing to allow plaintiff to retain counsel. (AR at 284-87).

decision.  (AR at 20, 25).  The Appeals Council denied plaintiff's timely request for review of the ALJ's decision.  (See AR at 4, 12-13).

Thereafter, plaintiff appealed to the United States District Court.

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1.    The ALJ's residual functional capacity assessment is not supported by substantial evidence.

2.    The ALJ failed to properly evaluate plaintiff's subjective symptoms and credibility.

**STANDARD OF REVIEW**

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999).  Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**DISCUSSION**

**A.    The Sequential Evaluation**

A claimant is disabled under Title II of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for

1  a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner

2  has established a five-step sequential process to determine whether a claimant is disabled.  20

3  C.F.R. §§ 404.1520, 416.920.

4         The first step is to determine whether the claimant is presently engaging in substantial

5  gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging

6  in substantial gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S. 137,

7  141 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment.

8  Parra, 481 F.3d at 746.  Third, the ALJ must determine whether the impairment is listed, or

9  equivalent to an impairment listed, in Appendix I of the regulations.  Id.  If the impediment meets

10  or equals one of the listed impairments, the claimant is presumptively disabled.  Bowen, 482

11  U.S. at 141.  Fourth, the ALJ must determine whether the impairment prevents the claimant

12  from doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  If the

13  claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and

14  must determine whether the impairment prevents the claimant from performing any other

15  substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

16         The claimant bears the burden of proving steps one through four, consistent with the

17  general rule that at all times, the burden is on the claimant to establish his or her entitlement

18  to disability insurance benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is

19  established by the claimant, the burden shifts to the Commissioner to show that the claimant

20  may perform other gainful activity.  Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir.

21  2006).

22  **B.   Plaintiff's Credibility**

23         At the February 1, 2007 hearing, with the assistance of an interpreter, plaintiff testified

24  that she stopped working on December 12, 2003, her alleged disability onset date, when her

25  knee gave out.  (See AR at 293-94, 295).  When the ALJ asked plaintiff why she stopped

26  working on that date, plaintiff testified that she "ha[d] so many things," she had surgery on her

27  knee, and then started having pain in her lower back.  (See AR at 294).  The transcript of the

28  hearing indicates that plaintiff had difficulties in setting forth a clear chronology of events

including when she stopped working, when she had surgery on her knee in relation to when she stopped working, and whether she returned to work after her knee surgery. (See AR at 294, 295). Plaintiff testified that she had fallen down a ladder while carrying 46 pounds of weight, and then started having pain in her tailbone. (See AR at 294). When the ALJ asked plaintiff if she had fallen before or after her knee surgery, plaintiff testified that she could not remember, directed the ALJ's attention to her "papers," and stated, "It seems so many things have happened." (Id.). The ALJ repeatedly asked plaintiff why she stopped working in December 2003, and plaintiff repeatedly stated that she could not remember. (See AR at 295). The ALJ responded, "Well, . . . if you don't remember stuff that happened to you how am I supposed to help you? Now I want you to concentrate, don't tell me you don't remember things." (AR at 295). The ALJ proceeded to ask plaintiff if she remembered having surgery on her knee, and plaintiff said, "Yes." (Id.). When the ALJ asked plaintiff whether she continued to work right up to the surgery, plaintiff responded, "Well, I'm very nervous." (Id.). The ALJ stated that her response was not an answer to his "simple question." (Id.). Plaintiff responded, "I know, I just get nervous, I don't like – " (Id.). The ALJ interrupted plaintiff to speak with plaintiff's counsel on the record:

> Okay, counsel . . . I just want you to know, I mean I'm trying to help here but if I can't get a straight answer out of your client, I can't help her. And . . . I'm asking some very simple questions like what's your name, what's your address type of questions. A person that gets knee surgery knows about when they get knee surgery, they know the circumstances around that. So I just don't believe her. . . . I'm trying to find out the sequence of these events, if she really stopped working December 12th, maybe she doesn't really remember. Maybe she didn't remember when she told them that's when she, or didn't remember that she told you that's when she stopped working. Some people stop walking six weeks before surgery because the pain is too great, I can't get her

1    to say that to me.  So I don't know what to do here.

2    (AR at 295-96).  Plaintiff's counsel asked for a minute to speak to plaintiff.  (AR at 296).  The

3    ALJ only allowed for a four-minute break, and stated that the parties would reconvene at "20

4    after[,] my time."[2]  (AR at 297).

5        After the parties reconvened, the ALJ continued his examination of plaintiff.  Plaintiff

6    testified that she last worked in 2003 as a machine operator, she remembered having knee

7    surgery, and she had not worked since her knee surgery.  (AR at 298).  Plaintiff testified that,

8    as a machine operator, she carried 46-pound boxes that contained yogurt cups, taking them

9    from one machine to another.[3]  (Id.).  Plaintiff testified that she placed the cups on a conveyor

10   belt and operated the machine by turning it on and off.  (See AR at 298-99).  Plaintiff testified

11   that she started to work for the yogurt company in 1979 and they had a machine that plaintiff

12   would only turn on and off.  (AR at 299).  After that, plaintiff testified that the company got new

13   machines and "that's where I fell down and the ladder and that's when I started having

14   problems with my low back."  (Id.).  When asked what the machine would do, plaintiff

15   responded, "We placed the cups. . . .  They're for yogurt, for Yoplait Yogurt."  (AR at 300).  She

16   stated that her machine would "move fast to take the cup in."  (Id.; see AR at 300-01).  She

17   stated that the cups "would go to the other side and then somebody else fills them up over

18   there."  (AR at 301).  The ALJ asked plaintiff what would happen to the cups inside the

19   machine, she stated, "I would just place the cup, I don't understand."  (Id.).  Plaintiff testified that

20   she had to lift over 20 pounds, but less than 50 pounds, the job required standing and walking,

21   but no sitting, and the machine she operated had no foot controls.  (See AR at 301).  When the

22   ALJ asked plaintiff why she did not return to work after her knee surgery, plaintiff responded,

23   "Because I had thyroid and sinusitis, it's very cold in there and I feel that . . . I'm choking."  (AR

24

25        [2]  Defendant erroneously asserts that the ALJ gave plaintiff twenty minutes to confer with her
26   attorney.  (Joint Stipulation at 14).

27        [3]  The interpreter initially translated plaintiff's response as "[m]achine operator for fish," but asked for
     a moment to re-clarify with plaintiff because she had misheard her.  (AR at 298).  She then translated
28   plaintiff's response, "I use to get, carry 46 pound boxes that contained yogurt cup."  (Id.).

at 302).  Plaintiff testified that she did not try another job because of another problem she had, and that she also had surgery on her stomach, after her knee surgery.  (See id.).  She explained, "When I was small . . . I burn my stomach and . . . they removed part of my skin and they cut a piece here and every month I, I have therapy with electrical heat."  (Id.; see AR at 303).  The ALJ asked, "Well, when, how old were you when they did the surgery or do you have a lot of surgeries?"  Plaintiff responded, "About two years ago" and stated she had had four surgeries, the first of which occurred in 1981 or 1982, when she was twenty-five or twenty-six years old.  (AR at 303).  Plaintiff testified that she took pills for her thyroid and her stomach, and used a spray for her sinuses.  (AR at 304).  The ALJ, again, asked her when she last had surgery on her stomach, and plaintiff, again, responded that it had been about two years.  (Id.).  Plaintiff testified that had lived with her partner, who also had been a machine worker where plaintiff had worked, and he had been on disability for a little more than a year due to an injury to his shoulder.  (See AR at 304-05, 307).  Plaintiff testified that she did not drive, but her partner drove.  (See AR at 306-07).  The ALJ asked plaintiff, "I thought you said he was disabled," and she responded, "But sometimes he takes me but he doesn't really do it."  (AR at 307).

Plaintiff's counsel then examined plaintiff.  Plaintiff testified that her biggest problems were her problems with her lower back and stomach.  (See AR at 308).  Plaintiff testified that she experienced a lot of pain, daily and especially when it was cold, and that the medication she took only relieved the pain for an hour or two and would make her sleepy.  (See AR at 308-09).  She also stated that she had received two injections for her back pain, but had not gone in for more because her insurance would send her a bill for $7,000.  (See AR at 309).  Plaintiff testified that she had back pain before her knee surgery, but her back pain had increased in severity since her knee surgery.  (See id.).  Plaintiff testified that a doctor had recommended that she have surgery on her back, but she was afraid to have the surgery.  (See AR at 309-10).  Plaintiff testified that she was able to stand for one or two hours before having to sit or lay down.  (See AR at 310).  She could walk for one hour before having to sit down.  (AR at 311).  Plaintiff also testified that she had problems sitting down, and had pain from her lower back to

1  her foot, on her left side.  (AR at 311).

2      In his decision, the ALJ determined that plaintiff retained the residual functional capacity

3  to lift 25 pounds frequently and 50 pounds occasionally; stand and/or walk six hours in an eight-

4  hour workday; sit six hours in an eight-hour workday; perform no more than occasional climbing

5  and balancing; and could not operate foot controls with her left lower extremity.  (AR at 23).

6  The ALJ determined that plaintiff's credibility was placed in doubt by the consultative examiner's

7  observations that plaintiff is a poor historian and her subjective complaints outweighed the

8  objective findings on examination, and found that her behavior and the inconsistencies in her

9  testimony at the February 1, 2007 hearing similarly undermined her credibility.  (See AR at 24-

10  25).  Relying on the vocational expert's testimony at the hearing, the ALJ concluded that plaintiff

11  retained the ability to perform her past relevant work as a machine operator.  (AR at 25).

12      Plaintiff now contends that the ALJ failed to properly evaluate her subjective symptoms

13  and credibility.  Plaintiff argues that the ALJ misstated her testimony at the February 1, 2007

14  hearing in finding her not to be credible.  Plaintiff asserts that she has a third grade education,

15  is unable to communicate in English, repeatedly stated at the hearing that she was very

16  nervous, and, thus, it was obvious that she did not understand some of the ALJ's questions at

17  the hearing.  (Joint Stipulation at 8-11, 14).

18      Pain of sufficient severity caused by a medically diagnosed "anatomical, physiological,

19  or psychological abnormalit[y]" may serve as the basis for a finding of disability.  42 U.S.C. §

20  423(d)(5)(A); see Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  However, an

21  ALJ need not believe every allegation of disabling pain.  See Orn v. Astrue, 495 F.3d 625, 635

22  (2007); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995); Fair v. Bowen, 885 F.2d 597, 603

23  (9th Cir. 1989).  To determine whether a claimant's testimony regarding subjective pain or

24  symptoms is credible, the ALJ must determine whether the claimant has presented objective

25  medical evidence of an underlying impairment "which could reasonably be expected to produce

26  the pain or other symptoms alleged."  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)

27  (en banc); see Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant need

28  not produce evidence of pain other than his own subjective testimony.  See Smolen v. Chater,

1   80 F.3d 1273, 1282 (9th Cir. 1996).  Nor must the claimant present objective medical evidence

2   of a causal relationship between the impairment and the symptom.  Id.  Rather, the claimant

3   need only show that the impairment could reasonably produce some degree of the symptom

4   alleged.  Id.  This approach reflects the Ninth Circuit's recognition of the "highly subjective and

5   idiosyncratic nature of pain and other such symptoms," such that "[t]he amount of pain caused

6   by a given physical impairment can vary greatly from individual to individual."  Id.

7        If the ALJ finds that the claimant's impairment could reasonably have caused some

8   degree of the pain or symptoms the claimant alleges, then, absent evidence of malingering, "the

9   ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

10  specific, clear and convincing reasons for doing so."  Id.. at 1281, 1283-84; see Batson v.

11  Comm'r, 359 F.3d 1190, 1196 (9th Cir. 2004).  The ALJ must specifically identify what symptom

12  testimony is credible and what evidence undermines the claimant's complaints.  Morgan v.

13  Comm'r, 169 F.3d 595, 599 (9th Cir. 1999).  In Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007),

14  the Ninth Circuit summarized the Social Security Rulings that specify the proper basis for

15  rejecting a claimant's testimony.  See SSR[4] 02-1p; SSR 96-7p.  Factors that an ALJ may

16  consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies

17  in testimony or between testimony and conduct, daily activities, and unexplained or

18  inadequately explained failure to seek treatment or follow a prescribed course of treatment.

19  Orn, 495 F.3d at 636 (citing Fair, 885 F.2d at 603 and Thomas v. Barnhart, 278 F.3d 947,

20  958-59 (9th Cir. 2002)).  On review, an ALJ's findings are entitled to deference if they are

21  supported by substantial evidence in the record and are sufficiently specific for the reviewing

22  court to assess whether the decision was impermissibly arbitrary.  Bunnell, 947 F.2d at 345-56.

23        Here, the ALJ determined that plaintiff's degenerative changes of the left knee, status

24  post arthroscopic surgery, lumbar strain syndrome, and L4-5 disc protrusion without

25  encroachment in the neural foramina were established by objective medical evidence and

---

27  [4] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations
    and policies.  Bunnell, 947 F.2d at 346 n.3.  Although they do not have the force of law, they are,
    nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or
28  regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1   constituted severe impairments.  (AR at 22; see AR at 142-45, 151-53, 180-81, 201, 231, 243-

2   44, 245, 272-73).  Further, although the ALJ's decision does not include an explicit finding that

3   plaintiff's underlying impairments could reasonably produce some degree of the symptoms she

4   alleged, the Court finds such a determination implicit in the ALJ's finding that the objective

5   medical evidence in the record documents persistent and significantly limiting impairments only

6   with respect to her orthopedic problems and statement that the disc protrusion shown in

7   plaintiff's December 2003 MRI examination "does not always result in pain and/or disabling

8   condition."  (AR at 24, 25).  See Smolen, 80 F.3d at 1282 (claimant must show that " the

9   impairment or combination of impairments could reasonably be expected to (not that it did in

10  fact) produce some degree of symptom").  Moreover, the ALJ did not make an affirmative

11  finding of malingering.  As such, the ALJ could only reject plaintiff's testimony regarding her

12  symptoms by providing specific, clear and convincing reasons for doing so.  See Carmickle v.

13  Comm'r, 533 F.3d 1155, 1160 (9th Cir. 2008); Smolen, 80 F.3d at 1281, 1283-84.

14       In this case, the ALJ failed to provide clear and convincing reasons for discrediting

15  plaintiff's subjective pain and symptom testimony.  The ALJ gave controlling weight to the

16  orthopedic consultative examiner's January 25, 2005 assessment of plaintiff's residual

17  functional capacity, finding that it was "well-supported by the overall record."[5]  (AR at 25; see

18  AR at 144).[6]  The ALJ discredited plaintiff's testimony regarding her subjective symptoms and

19  limitations based on the consultative examiner's observations that plaintiff is a poor historian

20  and her subjective complaints outweighed the objective findings on examination.  (See AR at

21  24, 144).  The consultative examiner, however, did not provide any basis for his observation

22  that plaintiff was a poor historian.  Rather, the consultative examiner merely stated that plaintiff

23  "reports to have incurred various injuries during the course of employment over the past several

24  ──────────────

25       [5]  As the ALJ noted, the record does not include an assessment of plaintiff's physical residual functional capacity by a treating physician.  (AR at 24).

26       [6]  The consultative examiner opined that plaintiff "should not be required to utilize her left lower

27  extremity for operation of foot controls, nor to weight bear for more than a total of six hours during the course of an eight-hour day.  She should not be required to lift and/or carry more than 50 pounds on an occasional basis, nor lift and/or carry more than 25 pounds on a frequent basis.  There is no restriction

28  pertaining to use of her upper extremities."  (AR at 144).

1   years." (See AR at 144).  There is no indication in the consultative examiner's report that

2   plaintiff presented conflicting or inconsistent information regarding her injuries, pain or

3   limitations.  See, e.g., Thomas, 278 F.3d at 959 (ALJ's finding that plaintiff "had not 'been a

4   reliable historian, presenting conflicting information about her drug and alcohol usage'" and

5   inference that her "'lack of candor carries over to her description of physical pain'" was

6   supported by substantial evidence in the record and supported ALJ's negative conclusions

7   regarding claimant's credibility).

8       The consultative examiner's report indicates that plaintiff complained of constant pain

9   in her lower back, tailbone and left knee, and stated that the pain was worse with standing and

10   walking, she has the most significant pain in the morning and at night, and that she was able

11   to walk approximately two to four blocks.  (See AR at 142).  The consultative examiner opined

12   that, "[d]uring the course of [the] evaluation, [plaintiff's] subjective complaints were found to

13   outweigh objective findings."  (AR at 144).  The ALJ noted that the consultative examiner

14   performed an examination of plaintiff's back complaints (AR at 143) and took X-rays of plaintiff's

15   lumbar spine (AR at 144).  (AR at 25).  However, the ALJ acknowledged that the consultative

16   examiner did not have access to plaintiff's December 2003 MRI (AR at 24), which indicated that

17   plaintiff had a "3 mm central disc protrusion" at L4-L5.  (AR at 244).  As previously stated, the

18   ALJ found that plaintiff's disc protrusion, even without encroachment in the neural foramina,

19   constituted a severe impairment.   (See AR at 22).  Indeed, it appears that the ALJ used his

20   own medical judgment in lieu of that of a medical expert in noting that "a disc protrusion, as

21   shown on [plaintiff's] MRI, does not always result in pain and/or disabling condition."  (AR at

22   25).  An ALJ may not substitute his own opinion for the findings and opinion of a medical expert.

23   See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ who is not qualified as

24   a medical expert must not go outside the record to make his own assessment as to the

25   claimant's condition); Gonzalez Perez v. Sec'y of Health & Human Servs, 812 F.2d 747, 749

26   (1st Cir. 1987) (ALJ may not "substitute his own layman's opinion for the findings and opinion

27   of a physician"); Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985) (ALJ may not substitute

28   his interpretation of laboratory reports for that of a physician); Winters v. Barnhart, 2003 WL

11

22384784, at *6 (N.D. Cal. Oct. 15, 2003) ("The ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert."); see also 20 C.F.R. § 404.1513(a)(1) (evidence necessary to establish a claimant's medically determinable impairments should come from "acceptable medical sources," such as a licensed physician).  Thus, to the extent the ALJ rejected plaintiff's subjective allegations of pain based on his own unsupported assessment of the disc protrusion shown in her MRI, the ALJ's assessment does not constitute a clear and convincing reason for discounting plaintiff's credibility.

Moreover, the ALJ acknowledged evidence in the record suggesting that plaintiff's disc protrusion did, indeed, result in pain.  (See AR at 22, 25).  The ALJ noted that plaintiff's "back pain complaints were treated seriously" and she had received epidural lumbar injections for her back pain in May and June 2004.  Plaintiff's testimony that she received two injections is consistent with the evidence in the record.  (See AR at 22, 25, 309; see also AR at 185, 186, 189, 191, 201, 212, 231, 234).  Further, the ALJ's speculation that the January 25, 2005 consultative examination was conducted "presumably following improvement in [plaintiff's] condition as a result of the procedures" is an insufficient basis upon which to discredit plaintiff's allegations of continuing pain.  (See AR at 25).  The treatment notes relating to the back injections indicate that these procedures were for "pain management," not that they were intended to, or capable of, improving plaintiff's lower back condition or eliminating her pain altogether.[7]  (See AR at 185, 188, 189, 203, 205, 206, 208, 222, 229, 230, 231, 232).  At the February 1, 2007 hearing, plaintiff testified that she had not gone in for additional injections due to the cost of the procedures and that a doctor had recommended that she have surgery on her back, but she was too afraid.  (See AR at 309-10; see also AR at 112).  Furthermore, the ALJ implicitly acknowledged that the medical evidence in the record documented persistent and significantly limiting impairments with respect to plaintiff's orthopedic problems.  (See AR at 24).  Even if there was a lack of objective evidence to support plaintiff's allegations, the ALJ may not

---

[7]  The treatment notes from plaintiff's June 30, 2004 injection indicated the following preoperative and postoperative diagnoses: "Chronic lower back pain with positive radiculopathy, which is consistent for positive MRI with disc bulging, status post-lumbar epidural steroid injection with recurrence of pain." (AR at 222).

1  disregard plaintiff's testimony as to subjective complaints solely because it is not substantiated
2  by objective medical evidence.  See SSR 96-7p ("An individual's statements about the intensity
3  and persistence of pain or other symptoms or about the effect the symptoms have on his or her
4  ability to work may not be disregarded solely because they are not substantiated by objective
5  medical evidence."); Burch, 400 F.3d at 680; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir.
6  1998); Smolen, 80 F.3d at 1282; Lester v. Chater, 81 F. 3d 821, 834 (9th Cir. 1995).  As
7  discussed below, the ALJ's other reasons for discrediting plaintiff's testimony do not withstand
8  scrutiny.

9       The ALJ also found that plaintiff's credibility was undermined by her behavior and
10  purported inconsistencies in her testimony at the February 1, 2007 hearing.  (See AR at 24).
11  In particular, the ALJ noted that plaintiff was consistently nonresponsive to questions, for
12  example, by not knowing why she had stopped working.  (Id.).  However, a review of the
13  hearing transcript reflects plaintiff's lack of understanding of the questions she was asked,
14  possible difficulties in translation and interpretation, her inability to remember the particular
15  chronology of events given her assertion that "so many things" had happened to her, and her
16  nervousness, not that plaintiff was intentionally nonresponsive.  (See, e.g., AR at 294, 295, 298,
17  301).  Plaintiff also referred the ALJ to her "papers" for assistance in establishing a chronology.
18  (See AR at 294, 304).  Additionally, although the ALJ also stated that plaintiff could not explain
19  what the machine she operated did, plaintiff testified that she placed yogurt cups on a conveyor
20  belt, her machine would move and take in the cups, and then the cups would come out of the
21  other side of the machine where someone else would fill them up.  (See AR at 298-301).[8]

22       Moreover, although an ALJ may consider inconsistencies in testimony in weighing a
23  claimant's credibility, see Orn, 495 F.3d at 636; Smolen, 80 F.3d at 1284; Fair, 885 F.2d at 604
24  n.5, here, the purported inconsistencies cited by the ALJ do not constitute clear and convincing
25  reasons for discrediting plaintiff's credibility.  The ALJ noted that plaintiff's counsel described
26  plaintiff's impairments as limited to her left knee and back (see AR at 293), but plaintiff testified

27
28     [8] On her disability forms, plaintiff indicated that she "lift[ed] boxes from pallet over to my work area table[,] place[d] yogurt cups on machine and the lids on another band."  (AR at 132).

1  that she did not return to work because of her thyroid and sinus problems (see AR at 302, 303).

2  (See AR at 24).[9]  This purported inconsistency is slight and insufficient to reject plaintiff's

3  credibility.  The hearing transcript indicates that plaintiff described a variety of health issues that

4  allegedly prevented her from returning to work.  Plaintiff testified that she had many problems

5  aside from her sinus and thyroid problems, including her knee problem (see AR at 294, 302),

6  pain in her lower back (see AR at 294, 308), pain in her tailbone due to a fall down a ladder at

7  the yogurt company (see AR at 294), and a burn on her abdomen that required skin grafts and

8  electrical heat therapy (see AR at 295, 302-03, 308).  Plaintiff's testimony is consistent with the

9  impairments she identified as limiting her ability to work in her application for Disability

10  Insurance Benefits and her Disability Report -Adult-Form SSA 3368, which were back, left foot

11  and left knee injuries and a thyroid problem.[10]  (See AR at 59, 102).

12       The ALJ also noted that plaintiff complained of a burn on her abdomen that required

13  grafting, but later admitted that the burn had occurred twenty-five years prior to the hearing.

14  (AR at 24).  The ALJ, however, failed to consider plaintiff's testimony that she had four skin

15  grafts on her abdomen, the most recent of which was only two years prior to the hearing, and

16  after her alleged disability onset date.  (See AR at 303, 304).[11]  The ALJ's statement that

17  _____

18  [9]  Plaintiff's testimony indicates that she did not return to the particular yogurt company for which she worked because she "had thyroid and sinusitis, it's very cold in there and I feel that . . . I'm choking."

19  (AR at 302).

20  [10]  Defendant argues that although plaintiff complained of pain related to her ovaries and a skin graft, as well as thyroid and sinus problems, and stated that her biggest problems were her back and stomach

21  at the hearing, she stated in her appeal application that her only limitation was that she could not "carry heavy stuff."  (Joint Stipulation at 11; see AR at 115).  The ALJ, however, did not rely on this asserted

22  inconsistency, but, instead cited to inconsistencies in plaintiff's statements at the hearing to support his credibility determination.  Any attempt to justify the ALJ's rejection of plaintiff's credibility post hoc is not

23  sufficient to cure the ALJ's error.  See Orn, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not

24  rely." (citing Connett, 340 F.3d at 874)); Vista Hill Found. v. Heckler, 767 F.2d 556, 559 (9th Cir. 1985) (a reviewing court may affirm an administrative decision only on grounds articulated by the agency;

25  see also Barbato v. Comm'r., 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996) (a court may remand if the decision of the ALJ as to claimant's entitlement to benefits on its face does not adequately explain how

26  a conclusion was reached, even if Social Security Administration can offer proper post hoc explanations for such unexplained conclusions).

27  [11]  The consultative examiner's January 25, 2005 report notes that plaintiff's past medical history

28  (continued...)

1  plaintiff, "[d]oubtfully . . . complained of pain in her ovaries" (AR at 24; see AR at 308) is also

2  an insufficient basis upon which to reject plaintiff's testimony given her testimony that she had

3  "one of her fallopian tubes" "opened up," and felt a pain inside her ovary, "like a pull and tugging

4  inside."[12]  (See AR at 303, 308).  And, although the ALJ stated that plaintiff has pain when it is

5  cold, but later stated that she had pain all of the time (AR at 24), plaintiff actually testified that

6  she had "a lot of pain, especially when it's cold," not only when it is cold, and that her pain

7  worsens when it is cold.  (See AR at 304, 308) (emphasis added).  Similarly, although the ALJ

8  found that plaintiff testified "at first that her partner drives her around, but later insisted that her

9  partner does not drive because he's on disability" (AR at 24), plaintiff actually testified that her

10  partner drives and, although he was on disability, "sometimes he takes me but he doesn't really

11  do it."  (See AR at 306-07).

12       The ALJ also found inconsistent plaintiff's testimony that she had "a lot" of pain, but

13  could stand and/or walk one or two hours.  (See AR at 24).  The ALJ, however, failed to explain

14  how this testimony was inconsistent.  Indeed, plaintiff testified that she experienced a lot of pain

15  on a daily basis, she could only stand for one or two hours and/or walk one hour before having

16  to sit or lay down due to the pain, and sitting down also caused her pain from her lower back

17  to her left foot.  (See AR at 308, 310-11).  Plaintiff also testified that she did not think she could

18  perform a job which would require her to be on her feet for eight hours a day.[13]  (See AR at

19  311).  Further, even if, as the ALJ noted, plaintiff's ability to stand or walk for one or two hours

20  suggested "a considerable capacity for work" (AR at 24), the ALJ failed to consider such a

21

22

_____

23       [11](...continued)
    included "abdominal surgery."  (See AR at 142).  Plaintiff's treatment notes from her May 2004 epidural
24  lumbar injection also lists knee surgery and "skin abdominal" among plaintiff's "previous hospitalizations
    and surgery."  (AR at 208).

25
         [12]  The Court also notes that Jagan Bansal, M.D., indicated in his June 13, 2006 and June 20, 2006
26  treatment notes that plaintiff had previously had surgery on her "ovary, intestine, stomach."  (AR at 254,
    257).

27
         [13]  Plaintiff testified that she "maybe" could perform such a job "with the medication, but then I get
28  drowsy."  (AR at 311).

1   limitation in finding plaintiff had the residual functional capacity to stand and/or walk six hours

2   in an eight-hour workday.  (AR at 23).

3       Finally, the ALJ noted that plaintiff's testimony regarding her daily activities "apparently"

4   was contrary to her allegations of markedly limiting pain.  (AR at 24).  In particular, the ALJ

5   stated that plaintiff "takes care of her ailing father, feeding him and preparing his bath" and "can

6   perform self-care activities for herself, as well as perform grocery shopping and a significant

7   range of household cleaning chores." (Id.).  In evaluating a claimant's credibility, an ALJ must

8   consider the factors set forth in SSR 95-5p, including a claimant's daily activities.  With respect

9   to daily activities, the Ninth Circuit has held that a specific finding that a claimant is able to

10  spend a substantial part of her day engaged in pursuits involving the performance of physical

11  functions that are transferable to a work setting may be sufficient to discredit a claimant's

12  allegations of pain.  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).  However, the

13  Ninth Circuit has cautioned that "many home activities are not easily transferable to what may

14  be the more grueling environment of the workplace, where it might be impossible to periodically

15  rest or take medication."  Fair, 885 F.2d at 603.  Activities such as grocery shopping, driving

16  a car, or limited walking for exercise do not "in any way detract from [a claimant's] credibility as

17  to [his or her] overall disability."  Vertigan, 260 F.3d at 1050.  The Ninth Circuit has repeatedly

18  stated that a claimant need not be utterly incapacitated in order to be disabled under the Social

19  Security Act.  See Fair, 885 F.2d at 603; Vertigan, 260 F.3d at 1050.

20      First, the Court notes that the ALJ inaccurately summarized much of plaintiff's testimony.

21  Plaintiff testified that "sometimes" she would take care of her father at his home, and her sister

22  sometimes would go with her and help her iron and clean the bathroom.  (AR at 305).  When

23  the ALJ asked her what she was able to do to take care of her father, herself, plaintiff

24  responded that she would "feed him sometimes" and "[o]pen the faucet so he can bathe, that's

25  it." (Id.).  Plaintiff testified that she could bathe, dress and feed herself, but could not "pick [up]

26  anything heavy." (See AR at 305-06).  Plaintiff also testified that she could make her bed, wash

27  clothes, and dust, and that she "always use[s] a brace."  She could also cook and wash dishes,

28  and testified that her sister would take her to shop for groceries.  (AR at 306; see AR at 126,

1  127, 131).  Plaintiff's ability to perform these activities do not contradict plaintiff's testimony

2  regarding the severity of her pain and the functional limitations to which she testified, such as

3  her inability to pick up heavy things, stand for one or two hours and/or walk one hour before

4  having to sit or lay down or perform a job that would require her to be on her feet for eight hours

5  a day.  See Reddick, 157 F.3d at 722 ("Only if the level of activity were inconsistent with

6  [c]laimant's claimed limitations would these activities have any bearing on [c]laimant's

7  credibility.").

8          Moreover, there is no indication that these activities consumed a substantial part of

9  plaintiff's day.  See Vertigan, 260 F.3d at 1049-50 (ALJ improperly relied on claimant's

10  testimony that she was able to go grocery shopping with assistance, walk approximately an

11  hour in the malls, get together with her friends, play cards, swim, watch television, read, take

12  physical therapy for six months and exercise at home in concluding that her daily activities were

13  inconsistent with her claims of pain because "these physical activities did not consume a

14  substantial part of [claimant's] day" (emphasis in original)).  Additionally, the activities that

15  plaintiff admittedly engaged in are not necessarily transferable to a work setting with regard to

16  the impact of pain.  See Vertigan, 260 F.3d at 1049, 1050; see also Fair, 885 F.2d at 603.

17  Importantly, the ALJ made no specific finding that plaintiff was able to spend a substantial part

18  of her day engaged in activities involving physical functions that are transferable to a work

19  setting.  See Orn, 495 F.3d at 639 ("The ALJ must make 'specific findings relating to [the daily]

20  activities' and their transferability to conclude that a claimant's daily activities warrant an

21  adverse credibility determination." (citation omitted)); Vertigan, 260 F.3d at 1049; Fair, 885 F.2d

22  at 603.  Nor did the ALJ find that plaintiff's ability to perform these activities was consistent with

23  his residual functional capacity assessment or his conclusion that plaintiff could return to her

24  past relevant work as a machine operator.  See, e.g., Orn, 495 F.3d at 639 (ALJ's conclusion

25  that because claimant was able to sometimes read, watch television and color in coloring

26  books, he had "transferable" skills to be a surveillance system monitor, which required

27  sustained concentration and attention, was not supported by substantial evidence).  Thus, to

28  the extent the ALJ found that plaintiff's testimony regarding her subjective pain and functional

1   limitations was not credible by virtue of her admitted activities, the ALJ failed to present clear

2   and convincing reasons to support his determination.

3        In sum, the ALJ's adverse credibility finding regarding plaintiff's testimony regarding her

4   subjective pain and functional limitations is not supported by substantial evidence that is clear

5   and convincing.

6   **C.    Remand is Required to Remedy Defects in the ALJ's Decision**

7        The choice of whether to reverse and remand for further administrative proceedings, or

8   to reverse and simply award benefits, is within the discretion of the Court.  McAlister v. Sullivan,

9   888 F.2d 599, 603 (9th Cir. 1989).  Remand is appropriate where additional proceedings would

10  remedy defects in the ALJ's decision, and where the record should be developed more fully.

11  Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

12       Here, the Court finds remand appropriate.  The reasons cited by the ALJ in support of

13  his rejection of plaintiff's credibility are insufficient.  On remand, the ALJ must offer specific,

14  clear and convincing reasons, supported by substantial evidence, for finding that plaintiff's

15  allegations of pain and functional limitations are not credible.   In the event the ALJ finds

16  plaintiff's subjective complaints are credible, the ALJ's determination of plaintiff's residual

17  functional capacity and her ability to return to her past relevant work should reflect such a

18  finding.[14]

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25       [14]  In the Joint Stipulation, plaintiff also contends that the ALJ's residual functional capacity
    assessment is not supported by substantial evidence.  As explained above, however, the ALJ's error
26  in failing to provide sufficient reasons for discrediting plaintiff's subjective symptoms and testimony
    constitutes sufficient reasons to remand this case.  Moreover, depending on the outcome of the
27  proceedings on remand, the ALJ will have an opportunity to address plaintiff's other argument again.
    In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when
28  determining the merits of plaintiff's case on remand.

1

**ORDER**

2        The Court, therefore, VACATES the decision of the Commissioner of Social Security

3    Administration and REMANDS this action for further administrative proceedings consistent with

4    this Memorandum Opinion and Order.

5        **LET JUDGMENT BE ENTERED ACCORDINGLY.**

6    DATED: March 5, 2009

7                                          /s/

8                              JENNIFER T. LUM
                              UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28